1
2
3
4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| 7  GAYLE REEVES-CAMERON, | No. 1:15-cv-03165-MKD |
| 8        Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY |
| 9    vs. | JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR |
| 10  COMMISSIONER OF SOCIAL | SUMMARY JUDGMENT |
| 11  SECURITY, | ECF Nos. 14, 15 |
| 12        Defendant. | |

13    BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate

15 judge. ECF No. 5. The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed. For the reasons discussed below, the Court

17 denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No.

18 15).

19
20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

1   *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate

2   nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

3   party appealing the ALJ's decision generally bears the burden of establishing that

4   it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

5                          **FIVE-STEP EVALUATION PROCESS**

6                A claimant must satisfy two conditions to be considered "disabled" within

7   the meaning of the Social Security Act. First, the claimant must be "unable to

8   engage in any substantial gainful activity by reason of any medically determinable

9   physical or mental impairment which can be expected to result in death or which

10  has lasted or can be expected to last for a continuous period of not less than twelve

11  months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be

12  "of such severity that he is not only unable to do his previous work[,] but cannot,

13  considering his age, education, and work experience, engage in any other kind of

14  substantial gainful work which exists in the national economy." 42 U.S.C. §

15  423(d)(2)(A).

16               The Commissioner has established a five-step sequential analysis to

17  determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

18  404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

19  work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

20

1   "substantial gainful activity," the Commissioner must find that the claimant is not

2   disabled.  20 C.F.R. § 404.1520(b).

3        If the claimant is not engaged in substantial gainful activity, the analysis

4   proceeds to step two.  At this step, the Commissioner considers the severity of the

5   claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6   from "any impairment or combination of impairments which significantly limits

7   [his or her] physical or mental ability to do basic work activities," the analysis

8   proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9   does not satisfy this severity threshold, however, the Commissioner must find that

10  the claimant is not disabled.  20 C.F.R. § 404.1520(c).

11       At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 404.1520(d).

17       If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  **ALJ'S FINDINGS**

5  Plaintiff applied for Title II disability insurance benefits on July 28, 2008,

6  Tr. 71-73, and for Title XVI supplemental security income benefits on July 29,

7  2008, Tr. 63-70, alleging a disability onset date of October 1, 2003 in both

8  petitions.  Tr. 87.  The applications were denied initially, and on reconsideration.

9  Tr. 43-45.  In an incident unrelated to Plaintiff's original claim for disability

10  benefits, Plaintiff suffered a subdural hematoma of the brain on September 2, 2007.

11  Tr. 24-25.  Plaintiff was found disabled for Title XVI supplemental security

12  income benefits as of September 2, 2007.  *Id.*  Plaintiff's date last insured was

13  December 31, 2005.[1]  Because Plaintiff was disabled under Title XVI after her

14  date-last-insured, she was denied Title II disability insurance benefits.  Tr. 43-45.

15  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on

16  September 9, 2010, seeking to prove she was disabled before her subdural

17  _____

18  [1] In order to obtain disability benefits, Plaintiff must demonstrate that she was

19  disabled prior to her last insured date.  *See* 42 U.S.C. § 423(c); 20 C.F.R.

20  § 404.1520.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

hematoma so that she could qualify for Title II disability insurance benefits.  Tr. 9, 576.  On November 23, 2010, the ALJ denied Plaintiff's claim.  Tr. 9, 576.  The Appeals Council remanded the case.  *Id.*  Plaintiff appeared for a hearing before a different ALJ on July 25, 2013.  Tr. 574-601.  On August 14, 2013, the ALJ denied her claim.  Tr. 7-23.  Plaintiff seeks review of the ALJ's determination that she was not disabled under Title II before her date last insured.  ECF No. 14.  The relevant adjudicative period is October 1, 2003 through December 31, 2005.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 1, 2003, the alleged disability onset date, through December 31, 2005, the date last insured.  Tr. 12.  At step two, the ALJ found Plaintiff had the following severe impairments during the adjudicative period: bilateral carpal tunnel syndrome and degenerative disc disease of the cervical spine.  Tr. 12.  The ALJ found that Plaintiff's other alleged impairment, anxiety, was non-severe.  Tr. 12.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 15.  The ALJ then concluded that Plaintiff had the RFC to perform light work, with the following non-exertional limitations:

> [S]he has no sitting limitations. She can occasionally climb stairs and ramps. She should not be required to climb ropes, ladders, and scaffolding. She should avoid concentrated exposure to extreme cold, vibration, and workplace hazards such as working at unprotected heights or around machinery with exposed moving parts. The claimant can perform occasional grasping bilaterally and frequent fine manipulation.

Tr. 16.  At step four, the ALJ found that Plaintiff was unable to perform relevant past work.  Tr. 21.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform, such tanning salon attendant, counter clerk, and dealer account clerk.  Tr. 21-22.  On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the adjudicative period.  Tr. 23.

On July 17, 2015, the Appeals Council denied review, Tr. 2-4, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

2. Whether the ALJ properly discredited Plaintiff's symptom claims.

ECF No. 14 at 7.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff faults the ALJ for the ALJ's interpretation of the medical opinion of Kirk Wong, M.D.; for discrediting the medical opinion of William Bothamley, M.D.; for crediting the opinion of Emily Moser, M.D. over that of Dr. Bothamley; and for discounting the opinion of Marie Ho, M.D.  ECF No. 14 at 9-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

*1.  Dr. Wong*

Between August 2005 and March 2006, Dr. Wong treated Plaintiff for bilateral carpal tunnel and cubital tunnel syndrome.  Tr. 312-36.  Dr. Wong performed two carpel tunnel release surgeries on Plaintiff in September 2005, and January 2006.  Tr. 17 (citing Tr. 312-36).  In March 2006, Dr. Wong opined that "the claimant was limited to light exertion and use of the hands in pushing, pulling, and reaching for three months."  Tr. 17 (citing Tr. 314).  The ALJ noted that this limitation "was presumably related to recovery from her first [carpal tunnel release] surgery."  Tr. 20.  The ALJ gave great weight to the opinion of Dr. Wong. Tr. 20.

Plaintiff does not challenge the ALJ's adoption of Dr. Wong's opinions but instead challenges the way the ALJ interpreted the three-month limitation Dr. Wong assessed.  Specifically, Plaintiff contends "the ALJ erred in speculating that Dr. Wong's opinion was that Ms. Cameron was limited to sedentary work only as a result of her surgery recovery instead of a result of the limitations from carpel tunnel and cubital tunnel syndrome."  ECF No. 14 at 11-12.  Plaintiff contends that the ALJ's uncertainty about the basis for Dr. Wong's opinion triggered the ALJ's duty to develop the record.

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even

when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  The regulations provide that if the evidence is insufficient or inconclusive regarding the disability determination, the ALJ may attempt to obtain additional evidence.  20 C.F.R. §404.1520b; *see also* 20 C.F.R. §§404.1519a.  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).  An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues that it was inappropriate for the ALJ to assume the basis of Dr. Wong's evaluation that Plaintiff would only have exertional limitations for three months.  Tr. 20 (citing Tr. 314).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d at 1111.  The ALJ gave sufficient reasons to support his inference that the Dr. Wong's time limit on Plaintiff's exertional limitations was a result of her recovery from surgery.  The ALJ examined the record and noted that Dr. Wong's

"notes ultimately reflect full recovery from the operations." Tr. 20 (citing Tr. 316).

For example, in March 2006, five weeks after Plaintiff's second carpal tunnel

release surgery, Dr. Wong described Plaintiff's numbness and tingling as "slowly

improving." Tr. 316. At that time, Plaintiff had "full elbow motion." *Id.* Dr.

Wong noted that Plaintiff was not suffering from atrophy, and that "she has decent

grip strength." *Id.* The ALJ determined that Dr. Wong's limitation, therefore,

must have referred to the effect of the surgery, rather than the effect of the

underlying disease because Plaintiff, by Dr. Wong's estimation, was recovering

well from surgery. Tr. 20. Moreover, at the administrative hearing, Plaintiff's

attorney represented Dr. Wong's opined limitation as referring to a three-month

recovery from surgery. Tr. 600 ("Her surgeon and her doctor had indicated that

prior to her surgeries and more three months after her last dual surgery that they

felt like she would be disabled."). The ALJ's inference was reasonably drawn

from the record and counsel's arguments, and therefore must be upheld by the

Court. *Molina,* 674 F.3d at 1111.

### 2. Dr. Bothemley

In December 2004, Dr. Bothemley, Plaintiff's primary care provider, opined

that Plaintiff "could do sedentary work and had limited handling ability." Tr. 20

(citing Tr. 341-42). The ALJ did not indicate how much weight he assigned to Dr.

Bothemley's opinions, only that "[m]ore weight is given to Dr. Moser, a neurologist[.]"  Tr. 20.

Because Dr. Bothemley's opinion was contradicted by Dr. Moser's, the ALJ only needed to provide specific and legitimate reasoning supported by substantial evidence to reject it.  *Bayli*ss, 427 F.3d at 1216.

First, the ALJ afforded less weight to Dr. Bothemley's opinion because the "opinion was vague and unclear regarding the basis for those limitations and it failed to address exertional and durational components."  Tr. 20 (citing Tr. 341-342).  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  Here, the ALJ found that the limitations opined by Dr. Bothemley were not supported.  Dr. Bothemley noted that Plaintiff had "suspected bilateral carpal tunnel syndrome."  Tr. 341.  He rated Plaintiff's ailment as "moderate."  *Id.*  He recommended additional tests be conducted to determine if surgical intervention was appropriate.  Tr. 342.  Dr. Bothemley did not indicate why he believed that Plaintiff was limited to sedentary work and had limited handling ability considering that he only rated Plaintiff's ailment as "moderate."  Tr. 341-342.  Conclusory limitations without support in the record provide a specific and legitimate reason to discount Dr. Bothemley's opinion.

1      Second, the ALJ discounted Dr. Bothemley's opinion because "[n]erve

2 conduction tests had not been done and [Dr. Bothemley] indicated they should be

3 done." Tr. 20 (citing Tr. 343). Under SSI regulations, two factors for determining

4 how much weight a medical opinion should receive are supportability and

5 specialization. 20 C.F.R. § 404.1527(c)(3), (5). Generally, "the better an

6 explanation a source provides for an opinion, the more weight we will give that

7 opinion," *Id.* at (c)(3), and "we generally give more weight to the opinion of a

8 specialist about medical issues related to his or her area of specialty." *Id.* at (c)(5).

9 Here, Dr. Bothemley is a family practice doctor who conducted simple range of

10 motion tests, whereas Dr. Moser is a neurologist who performed objective testing.

11 Tr. 340, 344. Dr. Bothemley's recommended nerve conduction tests were outside

12 of his specialty, and so referred to Dr. Moser. Tr. 342. Dr. Bothemley deferred to

13 Dr. Moser's evaluation of Plaintiff's condition in determining if she required

14 surgery. Tr. 342. The ALJ's determination that Dr. Moser's opinion should be

15 credited over Dr. Bothemley's is free of legal error.

16      *3. Dr. Moser*

17      Dr. Moser, a neurological physician, examined Plaintiff on December 23,

18 2004. Tr. 359. She opined that Plaintiff had a full range of motion as to her

19 shoulder, elbow, and wrist. Tr. 359. She rated Plaintiff's strength as 5/5 and her

20 grip as strong, after encouragement. *Id.* Dr. Moser did not assess any functional

1   limitations.  *Id.*  The ALJ did not specifically address how much weight he gave

2   Dr. Moser's opinion, other than to indicate that it was given more weight than Dr.

3   Bothamley's opinion.  Tr. 20.

4         Plaintiff faults the ALJ for treating Dr. Moser's absence of assessed

5   functional limitations as an assessment that there were no functional limitations.

6   ECF No. 14 at 14.  The ALJ is responsible for translating and incorporating

7   clinical findings into a succinct RFC.  *See Stubbs–Danielson v. Astrue,* 539 F.3d

8   1169, 1174 (9th Cir. 2008).  Here, Dr. Moser's overall assessment of Plaintiff

9   supported the ALJ's ultimate determination of Plaintiff's RFC.  Dr. Moser

10  diagnosed Plaintiff with "ulnar nerve compression at the elbow and median

11  compression at the wrist[,]" using electrodiagnostic studies.  Tr. 360.  Despite this

12  diagnosis, many of the results that Dr. Moser reported supported that the Plaintiff

13  did not have functional limitations.  Dr. Moser "observed full strength" and

14  unimpaired dexterity in the Plaintiff even before the carpal tunnel release surgeries.

15  Tr. 20 (citing Tr. 359-360.)  Dr. Moser noted breakaway weakness, an indication

16  of poor effort by Plaintiff.  Tr. 20 (citing Tr. 359).  When Plaintiff was encouraged

17  to try harder, Dr. Moser rated her grip as "strong."  *Id.*  The ALJ noted that the

18  results of the physical examination were assessed as "fairly benign" by Dr. Moser.

19  Tr. 14 (citing Tr. 360).  Ultimately, Dr. Moser assessed Plaintiff as having "mild"

20  compression of the ulnar nerve on the right and "more significant" median nerve

compression on the left.  *Id.*  She opined that "perhaps" surgical release would help

Plaintiff.  *Id.*  Because Dr. Moser evaluated Plaintiff's impairments as "fairly

benign," it was appropriate for the ALJ to rely on this assessment in making his

ultimate determination that the Plaintiff's was not disabled.

### 4. Dr. Ho

In July 2006, Dr. Ho examined Plaintiff and opined that Plaintiff was able to

lift 10 pounds occasionally; had no limit on standing, walking, sitting, and

bending; and that Plaintiff could only occasionally finger or grasp things.  Tr. 20

(citing Tr. 307-11).  The ALJ afforded "little weight to the manipulative limitations

assessed by Dr. Ho."  Tr. 20.

Dr. Ho's opinion was contradicted by Dr. Wong's opinion, thus, the ALJ

needed to provide specific and legitimate reasoning supported by substantial

evidence to reject it in whole or in part.  *Bayli*ss, 427 F.3d at 1216.  Plaintiff does

not challenge the parts of Dr. Ho's opinion that the ALJ credited.

First, the ALJ rejected Dr. Ho's assessed limitation because she looked at

very few of Plaintiff's medical records.  Tr. 20.  The extent to which a medical

source is 'familiar with the other information in [the claimant's] case record' is

relevant in assessing the weight of that source's medical opinion, *see* 20 C.F.R. §§

404.1527(c)(6); 416.927(c)(6); however, it is but one factor the ALJ can consider

in weighing a medical opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see*

1   *also Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007).  In this case, Dr. Ho noted

2   that she reviewed three notes regarding the Plaintiff's medical history, all were

3   handwritten and generated between October 14, 2005 and December 28, 2005.

4   Tr. 307.  This is a very limited portion of the Plaintiff's extensive medical history.

5   An ALJ cannot dismiss a medical opinion solely because the provider did not

6   review Plaintiff's medical record, however, it can be one of several specific and

7   legitimate reasons to discount an opinion.  *See* 20 C.F.R. §§ 404.1527(c),

8   416.927(c).

9        Second, the ALJ discredited parts of Dr. Ho's opinion because she only

10  examined Plaintiff one time.  Tr. 20.  The longer and more often a treating

11  physician has seen a claimant is a factor to be considered in weighing the medical

12  evidence.  *See* 20 C.F.R. 404.1527(c)(2)(i).  Generally, more weight is given to a

13  treating source than to an examining or reviewing source.  *Id.*  Here, Dr. Ho

14  evaluated Plaintiff on a single occasion.  Tr. 307-11.  Dr. Ho acted as an examining

15  source, evaluating Plaintiff only once and offering a medical opinion without

16  treating Plaintiff.  The ALJ credited the opinion of Dr. Wong over that of Dr. Ho.

17  Tr. 19-20.  Dr. Wong performed Plaintiff's carpel tunnel release surgeries and did

18  not limit the use of Plaintiff's hands except for the three months following surgery.

19  Tr. 20 (citing Tr. 314).  It is appropriate for an ALJ to give more deference to the

20

opinion of a treating provider whose relationship with Plaintiff lasted months over the opinion of a physician who only examined Plaintiff one time.

Third, the ALJ declined to adopt all of Dr. Ho's opinion because it was in conflict with test results that Dr. Ho reported. Tr. 20. A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). Here, the ALJ found that Dr. Ho's treatment notes did not support her assessed limitation that Plaintiff could only finger or grasp things occasionally. For instance, Dr. Ho assessed difficulties with Plaintiff's non-dominant hand, however, she also noted that Plaintiff was able to do finger-nose testing without difficulty. Tr. 20 (citing Tr. 309). Dr. Ho noted that Plaintiff had no atrophy with normal vibration, position, and sensory examination of the upper extremities. Tr. 20 (citing Tr. 311). She further indicated that there was no evidence of any joint deformities, crepitus, or effusion in the Plaintiff's hands. Tr. 20 (citing Tr. 310). These treatment notes tend to indicate that Plaintiff had effective use of her hands, including fingering and grasping. The contradiction between Dr. Ho's treatment notes and her recommendation regarding Plaintiff's ability to finger and grasp provides a specific and legitimate reason for the ALJ to discount her opinion.

Finally, the ALJ discounted part of Dr. Ho's opinion because she was "vague regarding how long she thought the manipulative limitation would last." Tr. 20.  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray,* 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  Dr. Ho opined that Plaintiff had fingering and grasping limitations.  Tr. 311.  However, her opinion did not include details such as the duration of this limitation, if it may be fixed with treatment, or how she arrived at that conclusion.  *See* Tr. 311.  The ALJ may find lack of support to be a specific and legitimate reason to discount a medical opinion.

**B.  Adverse Credibility Finding**

Next, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 14 at 17.

An ALJ engages in a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

1  that it could reasonably have caused some degree of the symptom." *Vasquez v.*

2  *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

3      Second, "[i]f the claimant meets the first test and there is no evidence of

4  malingering, the ALJ can only reject the claimant's testimony about the severity of

5  the symptoms if she gives 'specific, clear and convincing reasons' for the

6  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

7  citations and quotations omitted). "General findings are insufficient; rather, the

8  ALJ must identify what testimony is not credible and what evidence undermines

9  the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d

10  at 958 ("[T]he ALJ must make a credibility determination with findings

11  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

12  discredit claimant's testimony."). "The clear and convincing [evidence] standard

13  is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

14  F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

15  F.3d 920, 924 (9th Cir. 2002)).

16      In making an adverse credibility determination, the ALJ may consider, *inter*

17  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

18  claimant's testimony or between her testimony and her conduct; (3) the claimant's

19  daily living activities; (4) the claimant's work record; and (5) testimony from

20

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." Tr. 16.

### 1. Inconsistent Statements Regarding Substance Abuse

The ALJ found that Plaintiff's credibility was undermined by her misrepresentations and inconsistent statements regarding her substance abuse. Tr. 17-18.

An ALJ may support an adverse credibility finding by citing to inconsistencies in the claimant's testimony, prior inconsistent statements and general inconsistencies in the record. *Thomas*, 278 F.3d at 958-59 (inconsistencies in the claimant's testimony is properly considered); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (prior inconsistent statements may be considered); *Molina*, 674 F.3d at 1112 (an ALJ may support an adverse credibility finding by citing to general inconsistencies in the record). Moreover, an ALJ may properly rely on a lack of candor with respect to substance use when assessing credibility. *Thomas*, 278 F.3d at 959 (finding that lack of candor regarding substance abuse supported the ALJ's negative conclusions about the claimant's physical description of her pain).

1    As the ALJ noted, Plaintiff had previously denied any alcohol or drug abuse

2  in her testimony.  *See, e.g.,* Tr. 17 (citing Tr. 584, 421).  In 2006, Plaintiff reported

3  to Dr. Ho that she was a non-drinker and did not do recreational drugs.  Tr. 308.

4  Plaintiff reported to Dr. Peterson and Dr. Nguyen in 2004 that she was a non-

5  drinker.  Tr. 18-19 (citing Tr. 383, 387).  She reported in October 2004 that her last

6  alcohol consumption was in March 2004.  Tr. 354.  Plaintiff claimed to the

7  previous ALJ that she had not drank since 1998.  Tr. 584-87.  However, her

8  criminal and medical record are inconsistent with her reports regarding substance

9  use.  Plaintiff lost her license to a DUI in 2004 or 2005.  Tr. 18 (citing Tr. 588).

10  The record reflects that she was intoxicated when she fell in September 2007

11  causing a subdural hematoma.  Tr. 18 (citing Tr. 457, 449).  Plaintiff told Dr.

12  Peterson in October 2004 that she drinks approximately a beer a week.  Tr. 19.

13  And, when advised in November 2004 by Dr. Peterson that coffee and beer trigger

14  her gastritis, Plaintiff "agree[d] she needs to cut those down."  Tr. 19 (citing Tr.

15  375).  Plaintiff at several times tested positive for methamphetamine upon being

16  admitted to the hospital.  Tr. 17-18 (citing Tr. 176, 186, 212).  She admitted

17  methamphetamine use to the ALJ.  Tr. 19 (citing Tr. 585).  Plaintiff's inconsistent

18  statements extend through the adjudicative period and provide a legitimate reason

19  for the ALJ to discredit Plaintiff's symptom testimony.

20

### 2. Drug Seeking Behavior

The ALJ discredited Plaintiff's symptom claims because she had "a well-established longitudinal record of drug seeking behavior." Tr. 18. Drug-seeking behavior can constitute a clear and convincing reason to discount a claimant's credibility about pain. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug-seeking behavior undermines a claimant's credibility); *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007).

Here, the ALJ articulated substantial evidence in the record documenting Plaintiff's drug-seeking behavior. For example, the ALJ noted that Plaintiff asked her regular care provider, Dr. Bothamley to prescribe Benzodiazepines on several occasions. Tr. 18 (citing Tr. 371, 372, 378, 453). In October 2005, Plaintiff asked Dr. Wong for a new prescriptions to replace prescribed Oxycodone allegedly left at her sister's house. Tr. 326. Dr. Wong noted that on previous occasions, Plaintiff had asked for additional prescriptions because Plaintiff reportedly dropped her narcotic medication down the drain. Tr. 326. Plaintiff has used visits to the emergency room to gain access to narcotic prescriptions. Tr. 18 (citing Tr. 402). The ALJ reasonably relied on Plaintiff's drug-seeking behavior in discrediting her symptom claims.

1    *3. Daily Activities*

2        The ALJ found that Plaintiff's daily activities were inconsistent with the

3    severe limitations Plaintiff alleged and indicated the ability to persist in her daily

4    life. Tr. 19. A claimant's reported daily activities can form the basis for an

5    adverse credibility determination if the activities contradict the claimant's "other

6    testimony" or if those activities are transferable to a work setting. *Orn*, 495 F.3d at

7    639; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities

8    may be grounds for an adverse credibility finding "if a claimant is able to spend a

9    substantial part of his day engaged in pursuits involving the performance of

10   physical functions that are transferable to a work setting."). "While a claimant

11   need not vegetate in a dark room in order to be eligible for benefits, the ALJ may

12   discredit a claimant's testimony when the claimant reports participation in

13   everyday activities indicating capacities that are transferable to a work setting" or

14   when activities "contradict claims of a totally debilitating impairment." *Molina*,

15   674 F.3d at 1112-13 (internal quotation marks and citations omitted).

16       The ALJ observed that the Plaintiff "was able to do housework, cook and

17   drive." Tr. 19 (citing Tr. 417). Plaintiff also was able to take a trip in her car and

18   unpack the car. *Id.* Plaintiff admitted to "using her hands in preparing applications

19   while looking for work, mopping, sweeping, doing dishes, taking walks, going to

20   church occasionally, babysitting a friend's children, doing laundry and reading."

Tr. 19.  These daily activities demonstrate that Plaintiff was able to use her hands in her everyday life to complete simple tasks.  This undermines Plaintiff's claim that she cannot use her hands while working to complete simple tasks.  Even if the evidence of Plaintiff's daily activities may be interpreted more favorably to the Plaintiff, it is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Thus, Plaintiff's daily activities were reasonably considered by the ALJ as inconsistent with his complaints of disabling symptoms and limitations.

### 4.  Lack of Objective Medical Evidence

The ALJ discounted Plaintiff's symptom testimony because there is a lack of objective medical records to substantiate her alleged hand-related symptoms following her carpel tunnel release surgery.  Tr. 19.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-

7p.[2]  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

Plaintiff claimed during her first ALJ hearing that the primary impairment that kept her from working was her carpel tunnel.  Tr. 19.  Plaintiff underwent carpel tunnel release surgery in 2005 and 2006.  Tr. 17 (citing Tr. 312-36). Following her surgeries, Plaintiff's surgeon opined that Plaintiff should limit herself to light exertion for three months.  Tr. 17 (citing Tr. 314-15).  In the following years, Plaintiff did not complain of hand, wrist, or arm pain until late 2008, when she started complaining only intermittently.  Tr. 19.  Even so, the ALJ afforded Plaintiff a non-exertional limitation for occasional grasping.  Tr. 16.  The medical record tends to indicate that Plaintiff's carpel tunnel release surgery was successful at alleviating her hand pain.

---

[2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms. S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

1

**CONCLUSION**

2      After review, the Court finds that the ALJ's decision is supported by

3  substantial evidence and free of harmful legal error.

4      **IT IS ORDERED:**

5      1.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

6      2.  Defendant's motion for summary judgment (ECF No. 15) is **GRANTED.**

7      The District Court Executive is directed to file this Order, enter

8  **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

9  THE FILE.

10      DATED this 16th day of March, 2017.

11                              _S/Mary K. Dimke_
                              MARY K. DIMKE
12                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20